Case 13-01063-TPA    Doc 22    Filed 02/20/14    Entered 02/20/14 09:03:12    Desc Main
Document    Page 1 of 10

FILED
2/20/14 8:53 am
CLERK
U.S. BANKRUPTCY
COURT - ERIE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| GEORGE JULIUS STANKO, JR., | : | Case No. 09-10704-TPA |
| *Debtor* | : | Chapter 7 |
| | | |
| JOHN C. MELARAGNO, ESQ., | : | |
| TRUSTEE, | : | Adv. No. 13-1063-TPA |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| GEORGE JULIUS STANKO, JR. | : | |
| and JUDITH BROWN STANKO | : | |
| a/k/a JUDY STANKO, | : | |
| *Defendants* | : | |

*Appearances:* John C. Melaragno, Esq., for the Trustee/Plaintiff
Robert E. McBride, Esq. for the Defendants

## MEMORANDUM OPINION

In this case, the Chapter 7 Trustee ("Trustee") is seeking to avoid an alleged prepetition fraudulent transfer by the Debtor pursuant to *11 U.S.C. §548* and/or the *Pennsylvania Uniform Fraudulent Transfer Act*, *12 Pa. C.S.A. §§5101, et. seq* ("PaUFTA"). There are no material factual issues in dispute and the Parties agree that the Court should decide the matter without a trial, based on the stipulated facts, the admitted Exhibits, and the briefs that they have filed.[1] After careful consideration the Court concludes that judgment should be entered in favor of the Trustee.

---

[1] The Court's jurisdiction to hear this matter under *28 U.S.C. §1344* has not been raised as an issue. This is a core matter under *28 U.S.C. §157(b)(2)(H)*.

1

## FACTS

The case involves the disposition of real property located at 4221 Conrad Street in Erie, PA ("the Property"). The Debtor, George Stanko, originally owned the Property, individually. On September 24, 2008 he transferred ownership of the Property into the names of himself and Judy Stanko, his wife, as tenants by the entireties. At the time of this transfer the Property was valued at $80,000. The net value of the transfer was $14,188.16 after accounting for a first lien against the Property and in favor of Marquette Savings and Loan and some real estate taxes that were owed.[2] Both sides agree that the Debtor received no consideration and/or less than a reasonably equivalent value for the transfer, and he was insolvent at the time of the transfer or was rendered insolvent as a result of the transfer.

On April 17, 2009, the Debtor filed his bankruptcy petition under Chapter 13. His Official Form 22C showed that he had an annualized income of $74,299.68, which was more than $20,000 over the then-applicable Pennsylvania median income for a household of 2 persons, resulting in a required commitment period for the Chapter 13 of 60 months. The Debtor's petition also showed that he had total assets of $75,281.16, total liabilities of $189,408.10 (including unsecured claims of $125,646.76), net monthly income of $4,809.76 and monthly expenses of

---

[2] At some points in his filings, the Trustee appears to be holding out the possibility that the Property was actually worth up to $85,000 at the time of the transfer, which would increase the net value of the transfer at issue to $16,688.16. *See, e.g.*, Consolidated Pretrial Statement at 2. However, the actual stipulation by the Parties sets the estimated value of the Property at $80,000, *Stipulation of Fact (e)*. The Trustee has submitted no other evidence to support any higher value. The Court thus finds that the Trustee has waived any claim for a recovery based on a value any greater than $80,000.

$2,455.25. The original Plan proposed by the Debtor was for the required term of 60 months and provided for a monthly payment of $1,100. See Doc. No. 13 on the main case docket. It was estimated that this scenario would generate a total of $4,000 in payments to unsecured creditors over the life of the Plan, resulting in a 3.18% payoff. The Plan also provided that a minimum payment toward creditors of $4000 was needed to comply with the liquidation alternative test.

The Chapter 13 Trustee objected to the proposed Plan, in part because the Debtor did not dedicate all of his disposable income ($2,354 per month) to the Plan. Notes from a conciliation conference held on October 6, 2009, indicate that for this reason, the Plan payment was amended to $2,300 per month. On October 2, 2009, the Plan was confirmed on an interim basis. See Doc. Nos. 30, 32 on the main case docket. On January 5, 2012, final confirmation occurred.

On February 20, 2013, the Chapter 13Trustee filed a certificate of default asking that the case be dismissed because the Debtor was $9,973 in arrears on plan payments. The Debtor was directed to file a response or a proposed amended plan by March 25, 2013. On March 21, 2013, the Debtor filed a Notice of Conversion to Chapter 7 under *11 U.S.C. §1307(a)*. On April 19, 2013, an Order was entered converting the case to Chapter 7 and the Plaintiff was appointed to act as the Chapter 7 Trustee that same day. On April 25, 2013, the Chapter 13 Trustee filed a Trustee's Final Report and Account which disclosed that prior to the conversion the Debtor had paid $86,366.35 into the Plan,[3] of which $49,676.11 was paid by the Chapter 13 Trustee to unsecured creditors. On July 1, 2013 the Plaintiff initiated this adversary proceeding by filing a complaint.

---

[3] While this was a sizeable amount of payment, it was nowhere near the "plan base" and it is not disputed that the Debtor failed to complete the Plan.

3

## DISCUSSION

Fraudulent transfers under *11 U.S.C §548* can be of two varieties, those engaged in with an actual intent to hinder, delay or defraud creditors, *see Section 548(a)(1)(A)*, and those that are deemed to be constructively fraudulent, *i.e.* where fraud on the creditors is presumed without an intent requirement merely because of the attendant circumstances accompanying the transfer, *see Section 548(a)(1)(B)*.[4]   The Trustee is proceeding solely on a theory of constructive fraudulent transfer, and in that regard, the statute provides in relevant part as follows:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
> .....
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation...

*11 U.S.C. §548(a)(1)(B)*.

The required elements to prove a constructive fraudulent transfer claim *under Section 548(a)(1)(B)* are that: (1) the debtor had an interest in property; (2) a transfer of that interest

---

[4]   *PaUFTA* is structured similarly to *Section 548* with respect to the issues presented in this case.  Since similar reasoning would apply and a similar result would be reached under *PaUFTA*, no purpose is served by engaging in a separate discussion as to that statute.

occurred within one year of the bankruptcy filing; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and, (4) the transfer resulted in no value for the debtor or the value received was not reasonably equivalent to the value of the relinquished property interest. *See, In re Freuhaf Trailer Corp.*, 444 F.3d 203, 210 (3d Cir. 2006).

The *Stipulated Facts*, which of course the Defendants freely agreed to, establish beyond dispute all of the elements needed to meet the Trustee's burden of proof for a right to relief under *Section 548(a)(1)(B)*. *See*, *Stipulated Facts at (a), (d), (f)-(h)*. Furthermore, the Defendants have not questioned the Trustee's standing to pursue this matter, or challenged the matter on statute of limitations or other procedural grounds. The Court therefore finds that the Trustee has established a prima facie case for entry of an order granting the relief he requests. The onus is therefore squarely on the Defendants to show some good reason, in the nature of an equitable principle, an affirmative defense or otherwise, as to why the Court should not grant the Trustee relief even though he has proven his case.

The Defendants make an argument of sorts in this regard, but it is somewhat convoluted, based on false premises, unsupported by any legal authority to which the Defendants have pointed, and is therefore not persuasive to the Court. Stripped of some of the esoteric terminology that the Defendants use in their brief, the gist of their argument seems to be that the Court should find in their favor because the unsecured creditors would be the ultimate beneficiaries of any recovery by the Trustee in this action, and they have already received more in payments on

their claims through the Chapter 13 Plan than they would have if the case had originally been filed as a Chapter 7.[5]

According to the Defendants, it would be "unfair" and represent a "windfall" to the unsecured creditors if they were to receive any more payments. The Defendants also seek to portray the Chapter 13 case as constituting a bargain that the Debtor entered into whereby he was able to substitute by paying his future wages in exchange for what would otherwise have been available in his non-exempt assets to pay unsecured creditors. For the reasons discussed briefly below, the Court finds no merit in the Defendants' argument.

For one thing, as the Trustee correctly points out, it is disingenuous to argue for the "bargain" theory by trying to characterize the Debtor as having freely chosen to proceed initially under Chapter 13 rather than Chapter 7. Given the Debtor's current monthly income at the time of his bankruptcy filing, any attempt on his part to proceed under Chapter 7 would in all likelihood have been met with a successful challenge based on a presumption of abuse, resulting in either a dismissal of the case or a conversion to Chapter 13. The Trustee also correctly points out that the Debtor's original Plan proposal was to pay unsecured creditors a total of only $4,000 over the life of the Plan, less than a third of what would have been available to them just from the "missing" equity caused by the fraudulent transfer of the Property.

---

[5] The Trustee does not dispute the Defendants' contention that the unsecured creditors have already received more in payment through the Chapter 13 Plan than they would have in a hypothetical initial Chapter 7 filing by the Debtor, and the Court credits this contention as true. Even so, for the reasons discussed in the Opinion, that fact has no bearing on the outcome here.

6

It is also incorrect to say, or at least imply, that once the Debtor had made enough payments into his Chapter 13 Plan so that unsecured creditors would receive at least as much as they would have in a hypothetical initial Chapter 7 liquidation, he had somehow met all that was required of him. Once the Chapter 13 Trustee objected to the original Plan as proposed by the Debtor, as she did, the Plan could not be confirmed until it provided that all of the Debtor's projected disposable income during the 60-month commitment period would be applied to pay unsecured debt. *See, 11 U.S.C. §1325(b)(1)(B)*, commonly known as the "best efforts" test. That is why the monthly payment was significantly enlarged to $2,300 per month before the Plan was confirmed. The Debtor paid the Plan in part prior to the conversion, paying in more than would have been generated in a hypothetical initial Chapter 7 liquidation and enough to enable the unsecured creditors to receive a cumulative distribution of almost $50,000 in payments. Nevertheless, it is undisputed that he did not complete the Plan. He is therefore not entitled to be treated as if he did. *See 11 U.S.C. §1328(a)* (discharge to be granted "after completion by the debtor of all payments under the plan"). Nor did the Debtor seek a hardship discharge under *Section 1328(b)*.

The Trustee also is correct in asserting that the argument made by the Defendants is based on the false premise that they are joint debtors who had excess, non-exempt equity that they somehow "bought back" during the Chapter 13 case. In fact, however, there is and always has been, only one Debtor in this case. The transferee spouse, while a Defendant in this adversary proceeding, is not herself a debtor in bankruptcy.

Finally, an apparent change in focus by the Trustee with respect to the relief he is seeking further weakens the Defendants' argument insofar as it is based on the contention that the

7

equity in the Property which the Debtor purportedly "bought" during the Chapter 13 case is not part of his Chapter 7 case. In his Complaint, the Trustee sought various forms of relief, including an avoidance of the transfer of the Property and a determination that 100% of the Property constitutes property of the bankruptcy estate, as well as the standard catch-all of "such other and further relief" as the Court might find just and proper. In his brief, the Trustee has modified the relief he is seeking and now appears to be asking only that judgment be entered against Judith Stanko pursuant to *11 U.S.C. §550(a)(1)* in the amount of $14, 188.16.[6] In other words, the Trustee now seems content to seek recovery solely from a non-Debtor and does not seem to be seeking an order specifically authorizing him to liquidate the Property.

As was noted above, the Defendants have pointed to no legal authority supporting the result they seek here. The Trustee represents that he researched the issue as well and could find no such authority. The Court undertook its own research and came up empty as well. However, it is perhaps worth noting the Third Circuit opinion in *In re Michael*, 699 F.3d 305 (3d Cir. 2012). While not exactly on point, that case did touch on some principles that are at least pertinent to the issue presented.

In *Michael*, the debtor filed a case under Chapter 13, got his plan confirmed, made some payments to the Chapter 13 Trustee, and then converted his case to Chapter 7. At the time of

---

[6] Although the Trustee does not explicitly state that he is modifying his request for relief, that is the way the Court reads his Brief. The Court assumes that the existence of an appropriate exemption favoring the Debtor is the reason for this approach. In any event, if the Court's reading of his intent is incorrect, the Trustee always has the option of filing a timely motion for reconsideration on this point. The Court also notes that the Complaint includes a request for attorney fees. The Court sees no basis at this point for an award of attorney fees in this matter, but it will provide the Trustee with a chance to file a motion for fees if he wishes to do so.

the conversion the trustee was holding funds paid in by the debtor that were earmarked under the plan for payments to unsecured creditors but had not yet been distributed to them. The issue before the court was whether those funds should go to the creditors or be returned to the debtor.

The *Michael* court ultimately decided that the funds should be returned to the debtor.[7] The full basis for the court's reasoning need not be restated here but a couple of points are highly relevant to the issue presented in this case.

First, the *Michael* court stated that the primary purpose of a Chapter 13 case is "the confirmation and completion of a reorganization plan which results in the discharge of the Chapter 13 debtor's debts." 699 F.3d at 307. Thus, it is the *completion* of the plan which is key – something the debtor in this case failed to do. Second, the court recognized that its holding would have the "practical consequences" of making the total payments to creditors under the plan in a converted case dependent on the timing of the conversion and the practice of the particular chapter 13 trustee. 699 F.3d at 316. In other words, two converted Chapter 13 cases could be identical in all respects except that in one case the trustee had made a distribution to creditors prior to the conversion and in the other had not. The court recognized and accepted the dramatic differences in the outcomes of these otherwise identical cases, with the creditors retaining the benefit of the distribution in the first case, while the debtor can recover its payments in the second.

---

[7] The actual holding of the case is not critical for present purposes. The *Michael* court reached its conclusion largely on the basis of *11 U.S.C. §1327(b)*, which re-vests all of the property of the estate in the debtor upon plan confirmation unless otherwise provided in the plan or the confirmation order. In the Western District of Pennsylvania, the customary plan and confirmation order do *not* vest the property of the estate in the debtor upon plan confirmation. The *Local Rules* provide that upon conversion of a Chapter 13 case the trustee shall distribute funds in accordance with the terms of the confirmed plan. *See W.PA LBR 3021-1(f)*. This approach remains unaffected by the core result in *Michael* as specifically pointed out by the dissent in the case.

In the present case, the Chapter 13 Trustee had already made distributions to unsecured creditors by the time the Debtor filed his notice of conversion. Were the Court to find that the Debtor should nevertheless get a "credit" for his Plan payments that the Defendants could then use as a defense in this fraudulent transfer action, that would be an improper back door way of controverting the holding in *Michael*.

To sum up, the Defendants have made an interesting, theoretical argument as to how a Chapter 13 case might be conceptualized but they have completely failed in making a convincing legal argument in support of that concept. They have cited no legal authority for their position nor was the Court able to find any in its own research. No compelling reason has been provided to deviate from the result that normally follows when a Plaintiff has proven the elements of a fraudulent transfer action. An appropriate Order of Judgment will follow.

Dated: February 20, 2014

_____
Thomas P. Agresti, Judge
United States Bankruptcy Court

Case administrator to serve;
    Robert McBride, Esq.
    John Melaragno, Esq.
    Debtor